## DUNIGAN v. UNITED STATES.

### No. 43524.

Court of Claims.
May 31, 1938.

Frederic B. Warder, of Washington, D. C. (Guy and Brookes, of Washington, D. C., on the brief), for plaintiff.

John A. Rees, of Washington, D. C., and James W. Morris, Asst. Atty. Gen.,

(Robert N. Anderson and Fred K. Dyar, both of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and GREEN, LITTLETON, WILLIAMS, and WHALEY, Judges.

WHALEY, Judge.

This case involves the question of recoupment of an overpayment of an estate tax. The defendant has demurred to the petition on the ground that the refund claims were not timely.

The alleged facts show that in 1928 the Commissioner of Internal Revenue asserted certain deficiencies in income tax against David J. Dunigan for the years 1922, 1923, and 1924. In that year Dunigan filed a petition with the Board of Tax Appeals for a redetermination of the deficiencies for the years 1922 and 1923. Dunigan died on the 24th of September 1928, leaving a will, and the Probate Court appointed his wife, Helen M. Dunigan, administratrix, c. t. a. of the estate. She was also substituted as a party in the proceedings before the Board. A petition was filed with the Board by her as administratrix for the redetermination of the deficiency for 1924.

During the pendency of these petitions before the Board, and before the Board had rendered a decision, the Commissioner asserted a deficiency against the plaintiff for estate taxes on the principal ground that the income tax deficiencies asserted against Dunigan, which were then pending before the Board, could not be recognized as liabilities of the estate for the purpose of determining the value of the gross estate for estate tax purposes. Thereafter it was agreed between counsel for the plaintiff and the Commissioner that plaintiff execute a waiver of her right to file a petition with the Board of Tax Appeals and consent to the assessment and collection of the deficiency of the estate tax. The waiver as prepared by the defendant and executed by plaintiff read as follows:

"Waiver of Right To File Petition With the United States Board of Tax Appeals and Consent To Assessment and Collection of Deficiency in Estate Tax

"NOTE.—When executed, this waiver will not extend the statute of limitations for refund or assessment of tax, nor will it be an agreement under the provisions of Section 1106 of the Revenue Act of 1926.

"To the Commissioner of Internal Revenue, Washington, D. C.

"Attention: Estate Tax Division
"Miscellaneous Tax Unit.

"The undersigned executor of the estate of David J. Dunigan waives his right to file a petition with the United States Board of Tax Appeals for a redetermination of $15,012.80 (* the deficiency) recommended by the internal revenue agent, and consents to the immediate assessment and collection of the amount set forth above, *except the part thereof, arising from the disallowance of income tax liability of D. J. Dunigan, Inc., the determination of which is now pending before the Board of Tax Appeals. The right to adjustment or refund, as may be proper, is expressly reserved as to this item.* [Italicized words typewritten in original.]

"Date December 16, 1930."

The Commissioner thereupon assessed the deficiency and the plaintiff paid it on January 29, 1931. When this deficiency of the estate tax was paid, the income tax deficiencies against Dunigan were still under consideration by the Board. The Board on May 27, 1931, rendered a decision upholding the deficiencies for the years 1922 and 1923. An appeal was taken to the Court of Appeals for the District of Columbia but before the appeal was decided, plaintiff, on June 7, 1932, paid the deficiencies, as determined by the decision of the Board for 1922 and 1923, with accrued interest in the total amount of $84,774.18. In June 1933, the Court of Appeals affirmed the decision of the Board, Dunigan v. Burnet, 62 App.D.C. 221, 66 F.2d 201, and on October 18, 1934, the Board entered an order dismissing the petition for a redetermination of the deficiency for the year 1924. The order of the Board fixed the income deficiency for that year in the amount of $21,479.81. Plaintiff paid this amount with accrued interest of $12,225.08 on January 21, 1935. The deficiencies determined by the Board, exclusive of interest, amounted to $97,088.62, as compared with $125,165.26, which was originally asserted by the Commissioner and which was in controversy when the estate tax deficiency was assessed and collected. After the foregoing events had occurred and before plaintiff had paid the last deficiency, a claim for refund of the estate tax was filed on November 8, 1934, and the Commissioner rejected this claim on March 12, 1935. After the pay-

ment of the last deficiency and the rejection of the claim for refund, the plaintiff filed a second claim for refund of the estate tax on June 1, 1935, and on August 16, 1935, the Commissioner advised the plaintiff that the second claim had been considered a request for a reopening of the first claim and that the second claim had been rejected.

On March 10, 1937, the plaintiff brought suit in this court seeking recovery of $7,767.-08, being the overpayment of the estate tax after the income tax deficiencies had been deducted from the gross estate, and praying judgment in the alternative, namely, (1st) for a refund of the estate tax on the ground that the claims were timely filed or (2nd) for the same amount on the ground that when the collection of the income tax deficiencies was made, credit should have been given for the reduction in estate tax which would have resulted from a recognition of those deficiencies as liabilities of the estate in determining the value of the gross estate for estate tax purposes. The defendant has imposed a demurrer to the petition on the ground that the court is without jurisdiction for the reason that claims for refund were not timely filed within the purview of Section 319(b) of the Revenue Act of 1926, 26 U.S.C.A. § 510, which reads as follows:

"All claims for the refunding of the tax imposed by this title, [subchapter] alleged to have been erroneously or illegally assessed or collected must be presented to the Commissioner within three years next after the payment of such tax."

There is no question that the refund claims were not filed within three years from the payment of the estate taxes on January 29, 1931. The second claim was for the same amount and was for all purposes a request for the same relief. However, the second claim did convey the request for a refundment through recoupment or credit of an equal amount out of the income tax collections by application of the principle laid down in Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421.

There can be no question that if these two claims are viewed as ordinary claims for refund of the estate tax solely, they were not filed within the statutory period of three years after the payment of the estate tax. However, a different issue is raised by reason of the relationship of the estate tax claimed and the income tax deficiencies which were asserted and collected. After the income tax deficiencies had been

asserted by the Commissioner, plaintiff filed her estate tax return in which the income tax deficiencies were considered as liabilities for the purpose of arriving at the true value of the gross estate. However, the Commissioner refused to recognize these deficiencies as liabilities and asserted an estate tax deficiency on the gross estate including these deficiencies as liabilities. As has been mentioned above, these income tax deficiencies were pending before the Board and in the Court of Appeals of the District of Columbia until 1933 and 1934. During this period the waiver, above referred to, was executed on December 16, 1930, and by this waiver the plaintiff consented to the immediate assessment and collection of the estate tax deficiency but reserved the right to have an adjustment of the estate tax after the income tax liabilities were finally determined.

It is apparent from the facts above cited that the requirement of the Commissioner that the plaintiff pay the estate tax and the deficiency assessed by him on the estate before the income tax deficiencies, which had been asserted against Dunigan had been decided by the Board and the Court of Appeals of the District of Columbia, without recognition by him of the contingent liabilities of the estate for these deficiencies in whatever amount was found by the Board and the Court, made the gross estate that much larger and the tax which plaintiff had to pay would necessarily be proportionately larger.

In the waiver the plaintiff had requested recoupment and the defendant had consented to this waiver. Although the refund claim for the estate tax in the amount of $7,767.08 filed November 8, 1934, was not timely for the refund of the estate tax paid January 29, 1931, it was sufficient to permit recoupment by way of defense and credit against the income tax collections on the principle laid down in Bull v. United States, supra, when taken in conjunction with the other demands made for the adjustment of the estate tax.

In the Bull Case the Commissioner took inconsistent positions in regard to an item, namely, he collected an estate tax on certain earnings on the ground that they were a part of the corpus of the estate, and also, since the earnings were not collected until after the death of the decedent, he collected an income tax on the same earnings on the ground that they were income to the estate. After the income tax had been

proposed by the Commissioner, which was long after the estate tax had been collected, the taxpayer asserted that the same item could not be both corpus and income, but the Commissioner held a contrary view. The taxpayer then appealed to the Board of Tax Appeals from the proposed income tax deficiency on the ground that the earnings in question were corpus and accordingly should not be taxed as income, but the Board upheld the Commissioner's income tax determination. It was then too late to file a claim for refund of estate tax. The taxpayer, however, paid the income tax deficiency and filed a timely claim for its refund in which he still insisted that the item in dispute was corpus and not income. The Commissioner rejected the claim and suit followed in this court in which the taxpayer prayed for judgment in the alternative (1) for the income tax deficiency which had been collected or (2) for the estate tax which had been paid on the same item, on the theory that, if the item was taxable as income, the estate tax which had been paid thereon should be credited against the income tax due on the same item. We held that the income tax deficiency had been properly determined by the Commissioner and also denied the alternative relief on the ground that suit had not been timely instituted for recovery of the estate tax. Bull v. United States, 6 F.Supp. 141, 79 Ct.Cl. 133. The Supreme Court granted certiorari and affirmed our decision as to the taxability of the earnings for income tax purposes, but held that right of recoupment existed out of the income tax with respect to the estate tax which had been paid on the item properly taxed as income. Bull v. United States, 295 U.S. 247, 262, 55 S.Ct. 695, 79 L.Ed. 1421.

In its decision the court said (page 700):

" * * * If the claim for income tax deficiency had been the subject of a suit, any counter demand for recoupment of the overpayment of estate tax could have been asserted by way of defense and credit obtained, notwithstanding the statute of limitations had barred an independent suit against the government therefor. This is because recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded. Such a defense is never barred by the statute of limitations so long as the main action itself is timely.

"The circumstance that both claims, the one for estate tax and the other for income tax, were prosecuted to judgment and execution in summary form does not obscure the fact that in substance the proceedings were actions to collect debts alleged to be due the United States. It is immaterial that in the second case, owing to the summary nature of the remedy, the taxpayer was required to pay the tax and afterwards seek refundment. This procedural requirement does not obliterate his substantial right to rely on his cross-demand for credit of the amount which, if the United States had sued him for income tax, he could have recouped against his liability on that score.

"To the objection that the sovereign is not liable to respond to the petitioner the answer is that it has given him a right of credit or refund, which, though he could not assert it in an action brought by him in 1930, had accrued and was available to him, since it was actionable and not barred in 1925 when the government proceeded against him for the collection of income tax."

The situation presented in the case at bar is similar in many respects to the Bull Case. Here, as in that case, the Commissioner was proceeding to collect an income tax from plaintiff, or, as the Supreme Court expressed it, was seeking "the recovery of a just debt owed the sovereign." While that proceeding was in progress, the Commissioner initiated a similar action to collect another debt from plaintiff, namely, an estate tax. In effect, what plaintiff said when the second demand was made was that such demand could not be maintained, at least in its entirety, in the event the Commissioner's demand for income tax was sustained, since whatever income tax liability existed would reduce the gross estate and thereby reduce the estate tax. The Commissioner, however, refused to recognize his asserted income tax deficiencies, as affecting the estate tax liability, and proceeded to collect the estate tax after plaintiff had executed the waiver heretofore referred to which provided in part that "The right to adjustment or refund, as may be proper, is expressly reserved as to this item [the income tax liability then in controversy]." Under the reasoning of the Supreme Court in the Bull Case, "If the claim for income tax deficiency [ies] had been the subject of a suit" by the United States instead of an administrative proceeding as provided by the statute, it would certainly have been proper for plaintiff to have set up by way of defense a counter de-

mand that whatever income tax liability, if any, was ultimately established, should be taken into consideration in arriving at the estate tax liability. That was the understanding of plaintiff and defendant's revenue agent of the effect of what was sought to be accomplished by the execution of the waiver. It was the basis on which the waiver was executed and accepted by the Commissioner. However, that result was not accomplished; the Commissioner refused to recognize the counter demand when the income tax proceedings were finally terminated and the Commissioner insisted on collecting the entire income liability, without any adjustment admittedly proper on account of the estate tax liability.

After the income tax liabiltiy had been finally determined, which was the first time plaintiff was in a position to know the exact extent of the income tax liability and its effect on the estate tax, plaintiff, through the medium of the claim for refund filed November 8, 1934, asked for a refund of the estate tax and, when that was denied, filed another claim on June 1, 1935, for the same amount, which set up, a specific demand for recoupment under the theory that the principle in the Bull Case, supra, was applicable. Upon denial of that claim, this suit was instituted within two years thereafter.

In view of the foregoing, we are of the opinion that while claims for refund of estate tax were not timely filed, the other prayer for relief comes squarely within the principle of the Bull Case, and that plaintiff was entitled to have credited against the income tax deficiencies the amount of estate tax which would result from a determination of the gross estate after considering the income tax deficiencies as liabilities of the estate.

The demurrer should be, and accordingly is, overruled. It is so ordered.