**POND'S EXTRACT COMPANY**

v.

**The UNITED STATES.**

No. 50029..

United States Court of Claims.

Oct. 4, 1955.

Edmund W. Pavenstedt, New York. City, for plaintiff. White & Case and Josiah Willard, New York City, were on the briefs.

Harlan Pomeroy, Washington, D. C., with whom was Asst. Atty. Gen., H. Brian Holland, for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LARAMORE, Judge.

The plaintiff sues to recover excess profits taxes for the year 1944 in the amount of $118,301.24 with interest thereon on the ground that section 734 of the Internal Revenue Code, as amended, 26 U.S.C. (Supp. IV) § 734 (1940 Ed.) was improperly applied by the Commissioner, or in the alternative, for an equitable recoupment of income taxes overpaid for 1940, for which a timely claim for refund was not filed, against such excess profits taxes paid for 1944.

The facts, which have been stipulated,. may be summarized as follows: The plaintiff filed its income and excess profits tax returns on the calendar year accrual basis. For the years 1932 to 1939, inclusive, the defendant claimed that plaintiff owed additional excise taxes of $1,-346,469 plus interest. The plaintiff contested this claim and it was compromised in 1940 for $615,975.58, plus interest of $134,024.42. Pursuant to this settlement plaintiff, in 1940, paid $750,000 to the defendant.

This $615,975.58 excise tax paid was allocated for income tax purposes to the years 1932 through 1939 in proportion to the total additional excise tax liabilities

originally asserted by the Commissioner for each of these years. The amounts paid in settlement were claimed and allowed as deductions for income tax purposes for the years here in question, the base period years employed in determining the excess profits credit, as follows: 1936, $97,489.67; 1937, $104,919.06; 1938, $112,711.98; 1939, $61,452.58. The entire amount of interest paid by plaintiff under the settlement was claimed and allowed as a deduction in 1940.

In January 1944, the Supreme Court decided in Dixie Pine Products Co. v. Commissioner, 320 U.S. 516, 64 S.Ct. 364, 88 L.Ed. 420, that a contested tax liability could not be deducted until the taxable year in which the liability for the tax was finally adjudicated. This decision clearly indicated that the amount of $615,975.58 was erroneously allocated over the years 1932 through 1939 and should have been deducted in 1940, the year in which the contested tax liability was compromised.

If the amount of $615,975.58 had not been allocated and claimed and allowed as deductions for the years 1932 through 1939, and had been deducted in 1940, no part of plaintiff's 1940 tax of $123,027.77 would have been payable and there would have been a net operating loss carryover and an unused excess profits credit carryover to the year 1941, which would have resulted in a tax savings to plaintiff on account of its 1941 tax liability of $12,576.18 in income tax and $54,793.89 in excess profits tax.

In computing its excess profits tax credit for the years 1940 through 1943, plaintiff erroneously included the deduction of the allocated amounts in the base period years, thus incorrectly reducing its excess profits credit for the years 1940 through 1943. For 1944, plaintiff excluded the deduction of the erroneously allocated amounts from the base period years and correctly computed its excess profits credit for that year. If plaintiff had correctly computed its excess profits credit, its excess profits tax liability would have been the same for 1940, reduced for 1941 in the amount

of $34,061.77, the same for 1942, and reduced for 1943 in the amount of $17,173.63.

Upon audit of plaintiff's excess profits tax return for 1944, the Commissioner determined, in January 1947, that plaintiff had correctly computed its base period income for excess profits credit purposes for 1944 by eliminating as deductions the previously erroneously allowed excise tax deductions for the years 1936 through 1939, but made an adjustment in plaintiff's excess profits tax liability for 1944 under section 734 of the Code because of plaintiff's inconsistent position caused by its taking the erroneous deductions in the base period years. The section 734 adjustment was made by adding to plaintiff's excess profits tax liability for 1944, as excess profits tax liability, an amount of excess profits tax measured by the income tax which plaintiff would have paid for the years 1936 through 1939 if the deductions on account of the excise tax settlements allocated to those years had not been allowed, plus interest. This adjustment was $84,182.39 plus $34,118.85 interest, or a total of $118,301.24. This section 734 adjustment less offsetting adjustments resulted in a deficiency in plaintiff's excess profits tax for 1944 in the amount of $99,318.48. The deficiency was assessed on June 27, 1947, and on July 28, 1947, payments and credits in the total amount of $113,610.80 were made in satisfaction of the $99,318.48 and the interest in the amount of $14,292.32.

The plaintiff was allowed $34,118.85 deduction for the interest included in the section 734 adjustment, in the computation of its 1945 income and excess profits tax liability. As a result of this deduction and the consequent unused excess profits credit carryback to 1944, plaintiff's income and excess profits tax liabilities for 1944 and 1945 were reduced by $25,907.53.

On July 26, 1949, plaintiff filed a claim for refund of its 1940 income taxes in the amount of $123,027.77 and a claim for refund of $123,027.77 of its 1944 excess profits taxes. The claim for 1944

was timely, at least to the extent of $113,-610,80, but the claim for 1940 was not timely. Both claims were rejected and suit was duly filed in this court. The amount of excess profits taxes, including interest, paid by or credited to plaintiff for 1944 on and after July 25, 1947, does not exceed $113,610.80. See 26 U.S.C. § 322(b) (2) (B).

The pertinent part of section 734 of the Code provides:

"(b) Circumstances of adjustment.

"(1) If—

"(A) in determining at any time the tax of a taxpayer under this subchapter an item affecting the determination of the excess profits credit is treated in a manner inconsistent with the treatment accorded such item in the determination of the income-tax liability of such taxpayer or a predecessor for a prior taxable year or years, and

"(B) the treatment of such item in the prior taxable year or years consistently with the determination under this subchapter would effect an increase or decrease in the amount of the income taxes previously determined for such taxable year or years, and

"(C) on the date of such determination of the tax under this subchapter correction of the effect of the inconsistent treatment in any one or more of the prior taxable years is prevented (except for the provisions of section 3801) by the operation of any law or rule of law (other than section 3761, relating to compromises), then the correction shall be made by an adjustment under this section. If in a subsequent determination of the tax under this subchapter for such taxable year such inconsistent treatment is not adopted, then the correction shall not be made in connection with such subsequent determination.

"(2) Such adjustment shall be made only if there is adopted in the determination a position maintained by the Commissioner (in case the net effect of the adjustment would be a decrease in the income taxes previously determined for such year or years) or by the taxpayer with respect to whom the determination is made (in case the net effect of the adjustment would be an increase in the income taxes previously determined for such year or years) which position is inconsistent with the treatment accorded such item in the prior taxable year or years which was not correct under the law applicable to such year."

The facts establish and the plaintiff concedes that the technical requirements for the application of section 734 have been met in this case. The plaintiff contends, however, that this section was designed as a relief provision to prevent overreaching on the part of a taxpayer or the Government in order to achieve a just result. The plaintiff then points out that the Government needs no relief, it already has more money than it is justly entitled to keep. The defendant's position is that the application of section 734 is mandatory once its conditions have been met and that it was designed to discourage inconsistent positions and further that it would be inequitable not to apply section 734.

The purpose of section 734 and section 3801 was to correct errors made in prior years which were closed by the statute of limitations without allowing a double benefit to either the taxpayer or the Government. The person taking the inconsistent position is not required to take such a position, but if it is deemed advisable for present or future tax purposes to correct the error made in prior years these sections allow the correction. The allowance of such a correction with the recomputation of the tax for the prior year reflecting the change is inherently just and equitable, since it results in the payment of the correct tax. If the party taking the inconsistent positions persists in that position, the correction of the tax for the prior years is mandatory. Sec-

tion 734 provides that "the correction shall be made by an adjustment under this section."

We conclude that regardless of the equities, section 734 is mandatory if its conditions are met and since the conditions were satisfied in this case that section was properly applied.

We turn now to plaintiff's contention of equitable recoupment of its income taxes overpaid for 1940, for which a timely claim for refund was not filed, against its excess profits taxes paid for 1944. The plaintiff relies primarily on Bull v. United States, 295 U.S. 247, 55 S.Ct. 695, 79 L.Ed. 1421, and Stone v. White, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265, which set up a case law exception to the statute of limitations where the application of the statute worked a palpable injustice. In the Bull case, where equitable recoupment was applied in favor of the plaintiff, the Commissioner was collecting an estate tax on money received after the plaintiff's death and also collecting an income tax on the same amount. In the Stone case, where equitable recoupment was applied in favor of the Government, the Commissioner was allowed to retain the income tax erroneously collected from a trustee where the beneficiary, against whom the statute of limitations had run, was to ultimately receive the benefits of the refund. The basic facts of the Bull and Stone cases are essentially indistinguishable from those of the present case and the principle of equitable recoupment as enunciated in those cases would be applicable to the present case.

The Supreme Court, however, restricted and limited the Bull and Stone cases in Rothensies v. Electric Storage Battery Co., 329 U.S. 296, 67 S.Ct. 271, 91 L.Ed. 296. In the Rothensies case the taxpayer had overpaid its excise taxes for the years 1919 and 1926. In 1926 it sued for a refund for the open years, 1922 to 1926. The Commissioner settled by refund of $1,395,515.35. The Commissioner included this refund as income for the year 1935 and the taxpayer sought recovery on the ground that the refund was either not income or that it was entitled to recoup the excise taxes overpaid for 1919 to 1922. In holding for the Government and severely limiting the application of recoupment in tax cases, the Supreme Court stated at pages 299 and 300 of 329 U.S., at page 272 of 67 S.Ct.:

"* * * The essence of the doctrine of recoupment is stated in the Bull case; 'Recoupment is in the nature of a defense arising out of some feature of the transaction upon which the plaintiff's action is grounded.' 295 U.S. 247, 262, 55 S.Ct. [695] 700, 79 L.Ed. 1421. It has never been thought to allow one transaction to be offset against another, but only to permit a transaction which is made subject of suit by a plaintiff to be examined in all its aspects, and judgment to be rendered that does justice in view of the one transaction as a whole. * * * In both cases a single transaction constituted the taxable event claimed upon and the one considered in recoupment. In both, the single transaction or taxable event had been subjected to two taxes on inconsistent legal theories, and what was mistakenly paid was recouped against what was correctly due."

The Supreme Court pointed out that the statute of limitations itself was based upon fairness and the necessity to bring an end to claims, and specifically stated that the doctrine of recoupment should not be expanded in tax cases.

The task of distinguishing between factual situations that warrant the application of equitable recoupment in tax cases is admittedly a difficult one, and the distinction when made in some cases will be a tenuous one. However, we are of the opinion that plaintiff falls within the bounds of the Bull and Stone doctrine, as restricted by the Rothensies case. In the instant case there was only a single transaction or taxable event involved. That transaction was the 1940 erroneous allocation of the excise tax compromise. Because of this erroneous

allocation made in 1940 and plaintiff's desire to correct the mistake, and only because of that, the Commissioner was entitled to apply section 734, and in effect exclude the deductions from the base period years. The fact that the plaintiff took the inconsistent position by correcting its 1944 excess profits credit does not negate or devitalize the fact that plaintiff was, in effect, being taxed upon two inconsistent theories. One was that the settlement should not have been deducted from the base period years, thus it was excluded by the application of section 734, and additional tax was collected. The other was that a deduction was not allowed for 1940 when it was undeniably deductible in one or the other, thus the 1940 tax was not reduced. The failure to allow a deduction in one year or the other is equivalent to the same as taxing an item twice or the failure to pay any tax at all on an item. It is true that plaintiff could have filed a timely claim for refund, but that was also true in the Bull and Stone cases.

We think that it would be gross injustice under the facts and circumstances of this case, where the question of whether the settlement should be allocated or deducted in 1940 was much disputed, to allow the defendant to retain the plaintiff's overpayment and also to collect additional taxes arising out of the same taxable event. The defendant is clearly entitled to the correct additional taxes under section 734, but plaintiff is entitled to recoup against that sum the taxes mistakenly paid; i. e., $113,610.80, plus interest.

Judgment will be entered for plaintiff for $113,610.80 with interest as provided by law.

JONES, Chief Judge, and MADDEN, WHITAKER and LITTLETON, Judges, concur.